UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HENRY MITCHELL, III,<br><br>  Petitioner,<br><br>  v.<br><br>ROBERT FOX, Warden,<br><br>  Respondent. | No.  2:18-cv-0985 WBS AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition challenging petitioner's 2015 San Joaquin County conviction for assault with a firearm, criminal threats, and misdemeanor resisting arrest.  ECF No. 1.  Respondent has answered.  ECF No. 18.  Petitioner did not file a traverse, and the time for doing so has long passed.

## BACKGROUND

I.  Proceedings In the Trial Court

  A.  Preliminary Proceedings

An amended information charged petitioner with assault with a firearm (Pen. Code, § 245, subd. (a)(2)—count 1), criminal threats (Pen. Code, § 422—count 2), misdemeanor resisting arrest (Pen. Code, § 148, subd. (a)(1)—count 3), and assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)—count 4).  The information further alleged with respect to counts 1, 2 and

4 that defendant had personally used a firearm in the commission of the offenses (Pen. Code, § 12022.5, subd. (a)), had a prior strike conviction (Pen. Code, §§ 1170.12, subd. (b), 667, subd. (d)), had a prior serious felony conviction (Pen. Code, § 667, subd. (a)), and had served three prior prison terms (Pen. Code, § 667.5, subd. (b)).  1 CT 222-238.[1]

> B.  The Evidence Presented at Trial

The jury heard evidence of the following facts.[2]  In February 2015, Dominique Southern and her three children lived in an apartment complex at the corner of Lincoln and Flora in Stockton.  Petitioner lived a couple of blocks away at an apartment on Edison with Lakethea ("Keke") Williams, Adonnis Taylor (petitioner's brother and Keke's boyfriend), and Kedonta ("Nook") Southern (Dominique's sister and petitioner's girlfriend).

On February 16, 2015, Dominique was outside her apartment talking to her ex-boyfriend, Maurice Johns.  Petitioner ran outside and pointed a gun at Dominique and Johns.  Johns pushed Dominique's leg back and warned her petitioner was about to shoot and then Johns drove away.  Later that night, Dominique received text messages from her sister's phone.  One of the messages said, " '[y]ou fuckin' with that nigga, you going to be duckin' with that nigga.' "  Dominique believed it was petitioner texting her using her sister's phone.  She took the message as a threat that petitioner was going to shoot her.

The next day, petitioner was at Dominique's apartment with Nook, who was packing some of her things.  Because of the threatening message she had received, Dominique told petitioner to leave.  Petitioner argued with Dominique while Nook continued to pack, slowly.  Dominique became frustrated, grabbed Nook's things, and threw them out the door, over the balcony.

Petitioner and Nook left the apartment and headed toward the parking lot.  Petitioner continued to argue with Dominique, who was still standing upstairs outside of her apartment.  Petitioner ran back up the stairs, pulled a gun, pointed it at Dominique's head, and threatened to

---

[1] "CT" refers to the Clerk's Transcript on Appeal, which is docketed at ECF No. 19-9 and 19-10.
[2] This summary is adapted from the opinion of the California Court of Appeal, Lodged Doc. 4 (ECF No. 19-4) at 2-3.

"pop" her. Dominique took that as a threat that petitioner was going to shoot her and she was afraid. It appeared to her the gun was the same one petitioner had pointed at her the night before. Dominique backed into the apartment, slammed the door shut, and yelled she was going to call the police.

Dominique's neighbor, Nidia Altamirano, heard the altercation between petitioner and Dominique. She also saw petitioner point a gun at Dominique. Altamirano called 911.

After petitioner and Nook left, Dominique came out of the apartment and saw petitioner and Nook walking toward Flora Street. She also saw two police cars driving down the road. She flagged down the officers and told them which direction petitioner had gone. She also told them petitioner was armed and had pointed the gun at her.

Officers Sears and Fawver went in the direction Dominique indicated. They saw petitioner and Nook walking down the street, carrying a duffle bag. Fawver called out to petitioner. Petitioner looked back, saw the officers, dropped the duffle bag, and ran into an apartment complex. The officers gave chase, and eventually caught and arrested petitioner. Petitioner's front pocket was inside out. Officers searched the pursuit path and found a 0.22–caliber semi-automatic handgun on a driveway in front of a garage where the pursuit had begun. There was also an ammunition magazine nearby. The firearm did not belong to the owner of the home where the gun was found, nor had it been in the driveway when she left the house an hour earlier. There were no fingerprints or DNA found on the gun.

Keke, petitioner's brother's girlfriend, testified for the defense that Dominique had been arguing with Nook while she packed her clothes. She saw Dominique throw Nook's clothes over the balcony, but denied that petitioner ever entered the apartment or pointed a gun at Dominique. She testified Dominique made the whole story up, she had been acting "crazy" and might have been "coming off a high."

C. <u>Outcome</u>

The jury found petitioner guilty of counts 1, 2, and 3. It did not reach a verdict as to count 4, which was dismissed on the People's motion. The jury also found true that, as to counts 1 and 2, petitioner personally used a firearm. In bifurcated proceedings, petitioner admitted the prior

conviction and prison term allegations.

The trial court sentenced petitioner to an aggregate term of 23 years, consisting of the upper term of four years on count 1, doubled pursuant to the strike, plus 10 years for the personal use of a firearm enhancement and five years for the prior prison term enhancement; eight months on count 2, doubled pursuant to the strike, and stayed, plus 16 months for the personal use of a firearm enhancement, also stayed under Penal Code section 654; and four months on count 3, stayed. The prior serious felony conviction enhancement as to count 2 was stayed, as were the prior prison term enhancements.

II.     Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on April 25, 2017. Lodged Doc. 4 (ECF No. 19-4). The California Supreme Court denied review on July 19, 2017. Lodged Doc. 6 (ECF No. 19-6). Plaintiff filed no applications for state habeas relief.

The federal petition was timely filed.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed,

4

489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 563 U.S. at 102.

## DISCUSSION

I. Claim One: Admission of Prior Bad Act Evidence

A. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his constitutional rights were violated by the jury's consideration of prior bad acts evidence. Specifically, he alleges that the trial court should not have permitted the jury to consider Dominique Southern's testimony about petitioner pointing a gun at her boyfriend the night before the charged offense occurred and sending her threatening texts. He contends that this evidence was so prejudicial that it violated his rights to due process, confrontation, and the effective assistance of counsel. ECF No. 1 at 5 (incorporating by reference petition for review, attached), 7, 13-16, 18-22 (pertinent portions of petition for review).

The record reflects the following. The defense moved in limine to exclude any references to prior uncharged acts of misconduct by petitioner. 1 CT 202-205. This motion was generic as to uncharged conduct; it did not target any specific anticipated testimony from Ms. Southern. Id. at 203.[3] The court granted the motion in relevant part. 1 RT 41.[4] Before Ms. Southern testified, the trial court cautioned her not to "blurt out" information, and that she "shouldn't give information, let's say about [petitioner's] background that [she] may know about, or information that someone else [had] told [her]." 1 RT 98.

On direct examination, the prosecutor asked Ms. Southern how the incident on February 17 had begun. She explained that petitioner had entered the living room of the apartment and she told him to leave because she "didn't want him there because he had threatened [her] the night before over text messages." 1 RT 126. The prosecutor then asked for further explanation of the incident the previous night, and the defense objected on relevance grounds. 1 RT 127. The court overruled the objection, and Ms. Southern testified on both direct and cross-examination about defendant pointing a gun at her and Johns, and the text messages she received from her sister's phone which she believed defendant had sent. 1 RT 127-132 (direct), 156-162 (cross). After

---

[3] Ms. Southern had not reported the previous incident to police or the prosecutor, 1 RT 157-158, 164, and the defense did not anticipate the testimony, 1 RT 195.

[4] "RT" refers to

Southern concluded her testimony, the defense objected to admission of the portion regarding the uncharged incident as prejudicial.  1 RT 195.  That objection was also overruled.  1 RT 197.  The trial court found that there had been no intentional violation of court orders regarding the scope of testimony, and that the testimony was relevant to the issue of Ms. Southern's state of mind on February 17.  Id.

The trial court instructed the jury pursuant to CALCRIM No. 375, as follows:

> "The People presented evidence that the defendant committed other offenses that were not charged in this case.
>
> "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offenses and acts. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.
>
> "If the People have not met this burden, you must disregard this evidence entirely.
>
> "If you decide that the defendant committed the uncharged offenses/acts, you may but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant had a motive to commit the offenses alleged in the case or the state of mind of Dominique Southern on February 17, 2015.
>
> "Do not consider this evidence for any other purpose except for the limited purpose of motive and state of mind of Dominique Southern on February 17, 2015.
>
> "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crimes.
>
> "If you conclude that the defendant committed the uncharged offenses/acts, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes charged. The People must still prove each charge and allegation beyond a reasonable doubt."

2 CT 317-319.

### B. The Clearly Established Federal Law

The admission of evidence is governed by state law, and habeas relief does not lie for errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  The erroneous admission of evidence violates due process, and thus supports federal habeas relief, only when it results in the

denial of a fundamentally fair trial. Id. at 72. The Supreme Court has rejected the argument that due process necessarily requires the exclusion of prejudicial or unreliable evidence. See Spencer v. Texas, 385 U.S. 554, 563-564 (1967); Perry v. New Hampshire, 565 U.S. 228, 245 (2012).

C. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The appellate court ruled as follows:

> Generally, evidence of a person's prior criminal acts is inadmissible to prove a person's propensity to commit similar acts on a separate occasion. ([Evid. Code,]§ 1101, subd. (a).) But this rule does not affect the admissibility of evidence to prove some other relevant fact, such as an element of the offense. (§§ 1101, subds. (b) & (c), 210.) Nonetheless, the court may exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)
>
> We review the admission of evidence under sections 1101, subdivision (b), and 352 under the abuse of discretion standard. (People v. Kipp (1998) 18 Cal.4th 349, 369 [§ 1101]; People v. Rodrigues (1994) 8 Cal.4th 1060, 1124 [§ 352].) The trial court's decision should not be disturbed on appeal unless the trial court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (Id. at pp. 1124-1125.)
>
> Here, defendant was charged with making criminal threats against Dominique. To establish this offense, the prosecution had to prove that defendant acted with the specific intent that his statement be taken as a threat, that the threat caused Dominique to be in sustained fear, and that her fear was reasonable under the circumstances. (Pen. Code, § 422, subd. (a); People v. Garrett (1994) 30 Cal.App.4th 962, 966–968 (Garrett).) A defendant's prior criminal and violent conduct is relevant to establish these elements. (People v. Jones (2012) 54 Cal.4th 1, 49; Garrett, supra, at p. 966; see People v. Allen (1995) 33 Cal.App.4th 1149, 1156.) Specifically, " '[t]he victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear. [Citation.]' " (People v. Wilson (2010) 186 Cal.App.4th 789, 808.) "Seldom will evidence of a defendant's prior criminal conduct be ruled inadmissible when it is the primary basis for establishing a crucial element of the charged offense." (Garrett, supra, at p. 967.) Furthermore, "prior threats and acts of violence against a victim are admissible under [section] 1101,

> subdivision (b), to establish motive in a prosecution involving violence or the threat of violence against the same victim. [Citations.]" (People v. Fruits (2016) 247 Cal.App.4th 188, 204.)
>
> Having found the evidence admissible under section 1101, we still must find it admissible under section 352. (People v. Ewoldt (1994) 7 Cal.4th 380, 404.) Section 352 provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."
>
> "The prejudice which exclusion of evidence under [section] 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in [section] 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]" (People v. Karis (1988) 46 Cal.3d. 612, 638.)
>
> As indicated above, the evidence of defendant's prior misconduct toward Dominique was highly probative on the issue of his motive and her sustained fear and the reasonableness of it, elements of the offense. The testimony did not take up an undue amount of time and there was little likelihood it would confuse or mislead the jury. The uncharged conduct was not more inflammatory than the charged conduct and was not the sort of conduct which would " ' " 'uniquely tend[ ] to evoke an emotional bias against defendant.' " ' " (People v. Branch (2001) 91 Cal.App.4th 274, 286.) The jury was also instructed as to the limited purposes it could consider this evidence for, specifically that it could only consider it on the issue of motive and Dominique's state of mind and explicitly could not use the evidence to conclude that defendant has a bad character or propensity to commit crimes. Given the relevance and probative value of evidence of past threats, we find no abuse of discretion in the trial court's finding that the probative value was not "substantially outweighed by the probability that its admission [would] ... create substantial danger of undue prejudice." (§ 352.)

Lod. Doc. 4 at 6-8.

### D. Objective Reasonableness Under § 2254(d)

The appellate court resolved petitioner's claim exclusively as a matter of admissibility under California law. The state court's resolution of that issue is binding on this court. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

To the extent that the appellate court implicitly and summarily rejected petitioner's

9

constitutional arguments, AEDPA bars relief because the United States Supreme Court has never held that the admission of propensity evidence, uncharged misconduct evidence, or any other type of prejudicial evidence violates due process. Where the Supreme Court has not expressly announced the specific constitutional rule on which a petitioner relies for relief, there can be no unreasonable application of clearly established federal law. Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam). For this reason, the Ninth Circuit has repeatedly rejected § 2254 claims based on the admission of prejudicial evidence. See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006), cert. denied, 549 U.S. 1287 (2007).

Even without reference to AEDPA's limitations on relief, petitioner cannot prevail on this claim because the record does not support a finding of fundamental unfairness. Ms. Southern was cross-examined thoroughly, her failure to have previously reported the incident of February 16 was interrogated, and her credibility was argued. The jury was correctly instructed under California law regarding the permissible uses of the testimony, and was instructed regarding the evaluation of witness credibility. The independent eye-witness testimony of Nidia Altamirano, the circumstantial evidence of the gun found in petitioner's path of travel, and other evidence corroborated Ms. Southern's testimony as to the events of February 17, and there was ample evidence to support the verdict. Accordingly, there was no basis for the state court to find a federal constitutional violation.

II. Claim Two: Denial of Mistrial Motion

A. Petitioner's Allegations and Pertinent State Court Record

Petitioner separately alleges that the trial court's failure to grant his mistrial motion violated his constitutional rights. ECF No. 1 at 5 (incorporating by reference petition for review, attached), 7-9, 13-22 (pertinent portions of petition for review).

The record reflects that defense counsel made a motion for a mistrial after Ms. Southern's testimony concluded, but still in the middle of the trial. Counsel argued Ms. Southern had been "specifically instructed not to talk about any prior incidents, anything to do with the defendant on other occasions or in any history that she knew." 1 RT 195. Counsel contended that had she been

aware of Ms. Southern's claims about defendant's conduct the night before, she would have sought to exclude the evidence. Counsel also argued that had she known about the incident the night before, she "would have been able to send out an investigator to try to find and to confirm that alleged incident took place." 1 RT 196. The trial court found that Ms. Southern did not intentionally violate the court order that she not volunteer information about petitioner's past, and that the evidence was relevant to her state of mind on the criminal threats charge. The motion was accordingly denied. 1 RT 197.

### B. The Clearly Established Federal Law

Federal habeas relief does not lie for errors of state law. Estelle, 502 U.S. at 67. Such errors rise to the level of due process violations only where they render a trial and the resulting conviction fundamentally unfair. See id. at 72.

### C. The State Court's Ruling

The California Court of Appeal ruled in relevant part as follows:

> Defendant also contends the trial court abused its discretion in denying his motion for mistrial based on the admission of Dominique's testimony about the incident the night before the charged offense. He argues his chance for a fair trial was " 'irreparably damaged' " because defense counsel was precluded from investigating the claim, challenging the testimony's admission in limine, and from being able to fully prepare to cross-examine Dominique. As to this last claim, he contends this denied him his rights to counsel and confrontation.
>
> . . .
>
> "Denial of a motion for a mistrial is reviewed for abuse of discretion and should be granted 'only when " 'a party's chances of receiving a fair trial have been irreparably damaged.' " ' " (People v. Panah (2005) 35 Cal.4th 395, 444.) " ' "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." ' " (People v. Lucero (2000) 23 Cal.4th 692, 713–714.) "Although most cases involve prosecutorial or juror misconduct as the basis for [a mistrial] motion, a witness's volunteered statement can also provide the basis for a finding of incurable prejudice." (People v. Wharton (1991) 53 Cal.3d 522, 565.) Nevertheless, in this case, the trial court properly denied defendant's mistrial motion. As discussed above, the evidence that defendant had previously threatened Dominique was relevant to the issue of his motive and her sustained fear. Accordingly, the denial

> of the motion for mistrial on the basis of admitting this evidence was not error. (See People v. Williams (1997) 16 Cal.4th 153, 211-212.) Nor are we persuaded by the claim that the lack of ability to investigate Dominique's claim irreparably damaged defendant's chance of receiving a fair trial. The record reveals defense counsel thoroughly cross-examined Dominique on her claims. In addition, the motion for mistrial was made in the middle of trial, not at the end of trial. There remained time for defense counsel to conduct further investigation, and indeed, she indicated she was doing so. Lastly, the motion for mistrial should be granted when the harm cannot be cured by some other, less drastic, measure. Here, any harm caused by counsel's inability to more fully investigate the claim could have been remedied by a continuance to permit additional investigation. Counsel did not seek such a remedy. We cannot find the denial of the motion was an abuse of discretion that incurably prejudiced defendant's chances of a fair trial because he could not investigate claims, when he did not seek any less drastic remedy.

Lodged Doc. 4 at 8-10.

### D. Objective Reasonableness Under § 2254(d)

To the extent that this claim is distinguishable from Claim One, it turns on a purely state law question—whether the motion for a mistrial was correctly decided—and state law questions are not cognizable in federal habeas. See Pulley v. Harris, 465 U.S. 37, 41 (1984). This court lacks authority to review the California Court of Appeal's decision that the mistrial motion was properly denied. See Bradshaw, 546 U.S. at 76.

To the extent that petitioner alleges denial of the mistrial motion violated his due process and Sixth Amendment rights, the claim fails for the same reasons discussed in relation to Claim One. Any harm from denial of the motion is the same harm alleged from the jury's consideration of Ms. Southern's testimony. In the absence of Supreme Court authority holding that consideration of such evidence violates a defendant's constitutional rights, relief is unavailable under the AEDPA. See Wright, 552 U.S. at 125-26; Holley, 568 F.3d at 1101. Moreover, even without reference to AEDPA's limitations on relief, the trial record in this case does not support a finding of fundamental unfairness for the reasons previously explained.

### PLAIN ENGLISH SUMMARY FOR PRO SE PETITIONER

The magistrate judge is recommending that your petition be denied, because the claims you raise—whether Dominique Southern's testimony was admissible, and whether a mistrial

should have been granted—are issues of California law. This court cannot consider state law issues. You say that the trial court's errors also violated your federal constitutional rights, but the United States Supreme Court has never held that jury consideration of prior bad acts evidence violates the constitutional rights of a criminal defendant. Without a holding on point from the United States Supreme Court, the federal district court is barred from granting you habeas relief.

CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied. It is FURTHER RECOMMENDED that the court decline to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 4, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE